

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00097-CR

**ALEJO VARGAS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court**
**Johnson County, Texas**
**Trial Court No. DC-F201900792**

## MEMORANDUM OPINION

In four issues, appellant, Alejo Vargas, challenges his conviction for evading arrest

or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04. We affirm.

### I.     THE RIGHT TO REMAIN SILENT

In his first issue, Vargas argues that the trial court should have excluded a video

recording of his oral statements made to police because he did not make a knowing,

intelligent, and voluntary waiver of his statutory and constitutional right to remain silent.

*See* TEX. CODE CRIM. PROC. ANN. art. 38.22; *see also Miranda v. Arizona*, 384 U.S. 436, 86 S.

Ct. 1602, 16 L. Ed. 2d 694 (1966).  We disagree.

### A.  Standard of Review

In reviewing a *Miranda*-violation claim, an appellate court conducts a bifurcated

review:  (1) if affords almost total deference to the trial court's rulings on questions of

historical fact and on application-of-law-to-fact questions that turn upon credibility and

demeanor; and (2) it reviews de novo the trial court's rulings on application-of-law-to-

fact questions that do not turn upon credibility and demeanor.  *Alford v. State*, 358 S.W.3d

647, 652-53 (Tex. Crim. App. 2012) (citing *Ripkowski v. State*, 61 S.W.3d 378, 381-82 (Tex.

Crim. App. 2001); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We view

the record in the light most favorable to the trial court's conclusion and reverse the

judgment only if it is outside the zone of reasonable disagreement.  *State v. Dixon*, 206

S.W.3d 587, 590 (Tex. Crim. App. 2006).

### B.  Applicable Law

Under article 38.22 of the Code of Criminal Procedure, no oral statement of an

accused made as a result of custodial interrogation shall be admissible against an accused

in a criminal proceeding unless:  (1) the statement was recorded; and (2) prior to the

statement but during the recording, the accused was warned of his rights and knowingly,

intelligently, and voluntarily waived those rights.  TEX. CODE CRIM. PROC. ANN. art. 38.22,

§ 3(a); *Joseph v. State*, 309 S.W.3d 20, 23-24 (Tex. Crim. App. 2010).  The warnings required

by article 38.22 include those articulated in *Miranda*, as well as a warning that the accused "has the right to terminate the interview at any time." TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a), 3(a)(2); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

The State bears the burden of establishing a knowing, intelligent, and voluntary waiver of one's rights under article 38.22 and *Miranda*. *See Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011); *Joseph*, 309 S.W.3d at 24. A waiver must be proven by a preponderance of the evidence. *Leza*, 351 S.W.3d at 349; *Joseph*, 309 S.W.3d at 24. Without a valid waiver, a defendant's statement is generally inadmissible. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a); *see Berghuis v. Thompkins*, 560 U.S. 370, 381-82, 130 S. Ct. 2250, 2260, 176 L. Ed. 1098 (2010); *see also Joseph*, 309 S.W.3d at 24. In determining whether there was a valid waiver of Vargas's rights, we must look to the totality of the circumstances, "including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374-75, 99 S. Ct. 1755, 1758-59, 60 L. Ed. 2d 286 (1979); *see Leza*, 351 S.W.3d at 349; *Joseph*, 309 S.W.3d at 25.

A waiver can be expressly made or implied by the accused's conduct. *Berghuis*, 560 U.S. at 383, 130 S. Ct. at 2261; *Joseph*, 309 S.W.3d at 24. An implied waiver of one's rights is established upon a showing that the accused: (1) was given the proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement. *Berghuis*, 560 U.S. at 381-85, 130 S. Ct. at 2260-62; *see Moran v. Burbine*, 475 U.S. 412, 422-23, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); *Leza*, 351 S.W.3d at 349. "As a general

proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 560 U.S. at 385, 130 S. Ct. at 2262.

While it is true that a waiver cannot be presumed from an accused's silence or the fact that a confession was made after warnings were provided, "the general rule is that neither a written nor an oral express waiver is required." *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988) (en banc). Simply making a statement is often the kind of conduct viewed as indicative of one's intention to waive his rights. *See Berghuis*, 560 U.S. at 385, 130 S. Ct. at 2262; *Leza*, 351 S.W.3d at 348; *Joseph*, 309 S.W.3d at 25 n.7. The reason for the relatively low threshold is because "[t]he main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." *Berghuis*, 560 U.S. at 383, 130 S. Ct. at 2261.

## C. Discussion

The record demonstrates that Vargas was apprehended after leading Texas Department of Public Safety Trooper Brendan Helton on a seventeen-mile long pursuit that culminated with Vargas driving through the front yard of a residence and being trapped by a dead end. After drawing his service weapon, Trooper Helton ordered Vargas to exit his vehicle and lay on the ground. Subsequently, Vargas was handcuffed. Trooper Helton asked Vargas several questions before he advised Vargas of his rights

under Texas Code of Criminal Procedure 38.22 and *Miranda*. The record demonstrates that Vargas was advised that: (1) he had the right to remain silent and make no statement at all; (2) any statement that he did make could be used as evidence against him at trial; (3) he had a right to have a lawyer present to advise him prior to and during any questioning; (4) if he could not afford a lawyer, he had the right to have one appointed to advise him prior to and during any questioning; and (5) he had the right to terminate the interview at any time. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a). Trooper Helton then asked Vargas: "Do you understand your rights, sir?" Vargas responded, "yes, sir," and then proceeded to speak with Trooper Helton for approximately ninety seconds.

On appeal, Vargas argues that the evidence outlined above does not demonstrate that he expressly waived his constitutional rights. The trial court sustained Vargas's objection to the questions and answers provided prior to the *Miranda* warnings, but overruled Vargas's objection to the statements made after the *Miranda* warnings were provided on the basis of an implied waiver.

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we hold that the trial court's determination that Vargas impliedly waived his rights was not erroneous based on the fact that Vargas freely engaged with Trooper Helton after receiving and indicating that he understood his article 38.22 and *Miranda* warnings. *See Berghuis*, 560 U.S. at 381-85; 130 S. Ct. at 2261-62; *Leza*, 351 S.W.3d at 348; *Joseph*, 309 S.W.3d at 24, 25 n.7. Accordingly, we cannot say that the trial court abused its

discretion by admitting Vargas's oral statements made to Trooper Helton after receiving article 38.22 and *Miranda* warnings. *See Alford*, 358 S.W.3d at 652-53; *Ripkowski*, 61 S.W.3d at 381-82; *Guzman*, 955 S.W.2d at 89; *see also Dixon*, 206 S.W.3d at 590. We overrule Vargas's first issue.

## II. VARGAS'S PRIOR CONVICTIONS FOR EVADING ARREST OR DETENTION WITH A VEHICLE

In his second issue, Vargas argues that the trial court erred by admitting evidence of his two prior convictions for evading arrest or detention with a vehicle during the guilt-innocence phase of trial. Specifically, Vargas challenges the admissibility of the evidence under Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b).

### A. Applicable Law

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *Id.* at R. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* (internal quotation & citation omitted). "The rule excludes only that evidence that is offered (or will be used) solely for the

purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

Rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Further, defensive theories presented in the defendant's opening statement can open the door for admission of evidence of an extraneous offense as rebuttal evidence during the State's case-in-chief. *Hinojosa v. State*, 554 S.W.3d 795, 798 (Tex. App.—Waco 2018, no pet.) (citing *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008)); *see De La Paz*, 279 S.W.3d at 343 (noting that admitting evidence of extraneous offenses is permissible "to rebut a defensive issue that negates one of the elements of the offense").

## B. Discussion

In his opening statement, Vargas raised the defensive theory that he did not intentionally evade Trooper Helton to avoid arrest or detention. Specifically, Vargas argued the following in his opening statement:

> I think the evidence will be: There was a question about why the police wanted to stop Mr. Vargas, in his mind. Minority, Latino, isolated, two-lane country road, driving properly. From his position behind the wheel, is he being profiled? Is he being stopped with no reason?[1] Is this a police

---

[1] Trooper Helton testified that the vehicle Vargas was driving did not have a front license plate, as required by the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 504.943(a); *see also* 43 TEX. ADMIN. CODE § 217.27(b)(1). After activating the overheard lights on his vehicle, Trooper Helton observed the following regarding the initial attempt to stop Vargas:

officer that's going to be confrontational? I think those are all things that are the state of mind of the Defendant, Mr. Vargas. He let his wife get out of the car. She was pregnant. He did that in an effort to allow her release. He wanted to find an area where there would be people, observers, citizens who might observe if there was a confrontation, where is a safe place to stop. He's in the country.

So the two issues I think at the conclusion are: The state of mind of Mr. Vargas. Certainly it's an issue. It's part of the indictment allegation. And was he lawfully stopped. Was there a profile stop.

Prior to trial, the State filed a notice of intent to offer evidence of extraneous crimes, acts, and wrongs committed by Vargas, including Vargas's two prior convictions for evading arrest or detention with a vehicle. In response to Vargas's opening statement, the State offered the pen packets from Vargas's two prior convictions for evading arrest or detention with a vehicle. Vargas objected, but the State argued that the evidence rebutted Vargas's opening statement that he did not intentionally evade arrest or detention, but rather was concerned about racial profiling or a confrontation. The complained-of extraneous-offense evidence rebutted Vargas's argument that he may have been mistaken, that the traffic stop was racially motivated, or an attempt to avoid

---

The vehicle [Vargas's vehicle] immediately hit his flashers, pumped his brakes. Whenever he hit his brakes, I saw it also had a defective brake light. Drove on to the improved shoulder. It looked like it might be about to pull over and then continued to accelerate forward, drove at a sustained speed, lower speeds for a minute, crossed the bridge, and assumed the vehicle might be trying to find a safe place to pull over, which is understandable because the bridge is a narrow spot. I'm all about safety. But then we passed by the first place to pull over, vehicle continues to drive. Activate my overhead emergency audible sirens so they can clearly see lights and sirens, hey, this is a traffic stop, trying to get you to move over. Vehicle continues to drive. Ends up accelerating, and we pass over a dozen areas to pull over safely too.

confrontation. This evidence shows that Vargas knew exactly what he was doing when he evaded Trooper Helton, as he had done the same thing twice before. We therefore conclude that the trial court did not abuse its discretion by admitting the extraneous-offense evidence of Vargas's two prior convictions for evading arrest or detention with a vehicle under Rule 404(b) because the evidence rebutted Vargas's defensive theory raised in his opening statement. *See* TEX. R. EVID. 404(b); *De La Paz*, 279 S.W.3d at 343; *Bass*, 270 S.W.3d at 563; *Hinojosa*, 554 S.W.3d at 798; *see also Martinez*, 327 S.W.3d at 736; *Manning*, 114 S.W.3d at 926; *Montgomery*, 810 S.W.2d at 380, 391.

Next, Vargas complains that this extraneous-offense evidence should have been excluded under Texas Rule of Evidence 403 because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. We disagree.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Allen v. State*, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003); *Jones v. State*, 944 S.W.2d 642, 652-53 (Tex. Crim. App. 1996). When considering a Rule 403 objection, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues,

(5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The trial court has broad discretion in conducting a Rule 403 balancing test, and we will not lightly disturb its decision. *Allen*, 108 S.W.3d at 284. All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones*, 944 S.W.2d at 653. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that the evidence is considered unfairly prejudicial and in violation of Rule 403. *Id.*; *see Montgomery*, 810 S.W.2d at 389.

As stated above, evidence of Vargas's two prior convictions for evading arrest or detention with a vehicle was probative to rebut Vargas's defensive theory raised in his opening statement. Furthermore, the trial court could have reasonably concluded that the State's need for the evidence was "considerable" given that there was no other way to rebut Vargas's defensive theory that he was being racially profiled, that he was mistaken about the traffic stop, or that he was trying to avoid a confrontation.

Additionally, the danger of unfair prejudice was counterbalanced by the trial court's limiting instructions contained in the jury charge. Specifically, the charge instructed the jury as follows:

The Defendant is on trial solely on the charges contained in the indictment. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, such evidence may be admissible for other purposes, such as intent, preparation, plan, absence of mistake or accident, or to rebut a defensive theory.

The State has introduced evidence of extraneous matters other than the offenses charged in the indictment in this case. You are instructed that said evidence was admitted only for the purpose of showing intent, preparation, plan, absence of mistake or accident, or to rebut a defensive theory, if it does. You are further charged that is there is any evidence before you in this case tending to show that the Defendant committed the extraneous transaction, you cannot consider said evidence for any purpose unless you first find and believe beyond a reasonable doubt, that the Defendant committed said extraneous transaction. If you find and believe beyond a reasonable doubt, from such testimony that the Defendant committed the extraneous transaction, you may then consider the same for the purpose for which it was introduced, namely as evidence of intent, preparation, plan, absence of mistake or accident, or to rebut a defensive theory, if any, and for no other purpose.

Next, we note that the complained-of extraneous-offense evidence was neither confusing nor highly technical such that the jury was ill-equipped to evaluate the probative force of the evidence. Moreover, the evidence was contextual and relevant to rebut Vargas's defensive theory challenging the intent element of the offense. As such, we cannot say that the evidence had a tendency to distract the jury or be given undue weight by the jury.

Finally, with regard to the final factor, a review of the record shows that the presentation of the evidence did not consume an inordinate amount of time or merely repeat evidence already admitted. Therefore, based on the foregoing, we cannot say that

there is a "clear disparity" between the danger of unfair prejudice posed by the extraneous-offense evidence and its probative value. Accordingly, we conclude that the trial court did not abuse its discretion by overruling Vargas's Rule 403 objection. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42; *Allen*, 108 S.W.3d at 284; *Jones*, 944 S.W.2d at 653; *Montgomery*, 810 S.W.3d at 389; *see also Martinez*, 327 S.W.3d at 736; *Manning*, 114 S.W.3d at 926. We overrule Vargas's second issue.

### III.    THE JURY CHARGE

In his third and fourth issues, Vargas complains about the jury charge. In particular, Vargas asserts that the trial court erred by failing to limit the definition of "intentionally" to the relevant conduct elements of the offense alleged in the indictment and by failing to include a statutory definition of "knowingly" in the charge.

#### A.  Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, as is the case here, a reversal will be granted only if the error presents egregious harm, meaning Vargas did not receive a fair and impartial trial. *Id.*

To obtain a reversal for jury-charge error, Vargas must have suffered actual harm and not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

In determining whether charge error has resulted in egregious harm, we consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of the parties; and (4) any other relevant information revealed by the trial as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

The culpable mental states in the penal code encompass three possible conduct elements that may be involved in an offense: (1) nature of the conduct; (2) result of the conduct; and (3) circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03; *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). Stated differently, some crimes are defined in terms of the result, and some are defined in terms of conduct or circumstances. When an offense is specifically delineated as to the type of conduct, the trial court should limit the statutory definitions in the jury charge to the culpable mental state required. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *see also Cook*

*v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991, pet. ref'd).

**B. Discussion**

The abstract portion of the charge provides the following regarding the definition for "intentionally," which tracks the definition provided in section 6.03(a) of the Texas Penal Code: "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *See* TEX. PENAL CODE ANN. § 6.03(a). Vargas alleges that the charge improperly included "result of conduct" language in the definition of "intentionally" in the abstract portion of the charge.

However, in the application portion of the charge, the trial court correctly tailored the culpable mental states to the charged offense of evading arrest or detention with a vehicle. *See id.* § 38.04(a) ("A person commits an offense [of evading arrest or detention] if he intentionally flees from a person he knows is a peace office or federal special investigator attempting lawfully to arrest or detain him."). Specifically, the application portion of the charge provided the following, in pertinent part:

> Now with respect to Count One of the indictment and bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, Alejo Vargas, on or about the [sic] March 26, 2019[,] in Johnson County, Texas, did then and there while using a vehicle, intentionally flee from B. Helton, a person the Defendant knew was a peace officer who was attempting to lawfully arrest or detain the Defendant, you will find the Defendant guilty of the offense of Evading Arrest or Detention with a Vehicle and so say by your verdict, but if you do

not so believe or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of Evading Arrest or Detention in a Vehicle and say by your verdict "not guilty."

The Court of Criminal Appeals has held that "[w]here the application portion correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) (holding that the inclusion of a merely superfluous abstraction never produces reversible error in the court's charge because it has no effect on the jury's ability to implement fairly and accurately the commands of the application paragraph or paragraphs). Moreover, abstract statements of the law that go beyond the allegations in the indictment will not present reversible error when the trial court's application of the law to the facts effectively restricts the jury's deliberation to the allegations in the indictment. *Grady v. State*, 614 S.W.2d 830, 831 (Tex. Crim. App. 1981).

Therefore, assuming, without deciding, that the abstract portion of the charge contained error, we cannot conclude that the purported error regarding the definition of "intentionally" was egregious because the application paragraph correctly limited the culpable mental state as charged in the indictment. *See* TEX. PENAL CODE ANN. § 38.04(a); *see also Medina*, 7 S.W.3d at 640; *Plata*, 926 S.W.2d at 302-03; *Grady*, 614 S.W.2d at 831. Indeed, the application paragraph tracked the indictment, which tracked section 38.04(a) of the Texas Penal Code. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996)

(holding that a jury instruction that tracks statutory language "will not be deemed error on the part of a trial judge").  Accordingly, the charge as a whole does not weigh in favor of egregious harm.

Regarding the second *Allen* factor to be considered, the "state of the evidence," Vargas argued at trial that he did not intentionally evade Trooper Helton, but rather, attempted to avoid confrontation and because he purportedly believed that he was being racially profiled.  Though Vargas does not raise a sufficiency issue in this appeal, there is legally sufficient evidence for a rational jury to find that Vargas intentionally evaded Trooper Helton, especially in light of evidence showing that:  (1) Trooper Helton activated his emergency flashers and signaled for Vargas to stop; (2) Vargas fled from Trooper Helton, circling his trailer park and stopping twice—once to allow his pregnant wife to exit the vehicle; and (3) Vargas evaded for another seventeen miles at speeds up to ninety miles per hour.  This factor does not suggest Vargas was egregiously harmed.

As to the third *Allen* factor, "arguments of counsel," Vargas argued, as mentioned above, that he did not intentionally evade Trooper Helton.   Rather, Vargas emphasized that he was the victim of racial profiling and that he was attempting to avoid conflict. The State emphasized that Vargas intentionally fled from Trooper Helton and was fully aware that Trooper Helton was a peace officer attempting to arrest or detain Vargas.  In other words, the State did not erroneously argue the culpable mental state necessary for

the offense of evading arrest or detention in a motor vehicle. As such, we find nothing in the arguments to indicate that Vargas was egregiously harmed.

Finally, with respect to the fourth *Allen* factor, we are not aware of "any other relevant information revealed by the record of the trial as a whole" that we should consider. *See Allen*, 253 S.W.3d at 264.

Therefore, given that none of the *Allen* factors weigh in favor of a finding of egregious harm, we conclude that any error in the abstract portion of the charge regarding the definition of the culpable mental state of "intentional" was not calculated to injure Vargas's rights or deprived him of a fair and impartial trial. *See Allen*, 253 S.W.3d at 264; *Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121.

In addition to the foregoing, Vargas also complains about the absence of a definition in the charge for the culpable mental state of "knowing," which is also applicable to the charge of evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04(a). The absence of this definition from the charge is erroneous. *See* TEX. PENAL CODE ANN. § 38.04(a) ("A person commits an offense if he intentionally flees from a person he *knows* is a peace officer . . . attempting lawfully to arrest or detain him." (emphasis added)); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (noting that the trial court is obligated to include in the jury charge statutory definitions that affect the meaning of elements of the crime); *Smith v. State*, 959 S.W.2d 1, 25 (Tex. App.—

Waco 1997, pet. ref'd) ("'The trial court should provide the statutory definition for any term that is statutorily defined.'" (quoting *Nguyen v. State*, 811 S.W.2d 165, 167 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd))). However, after reviewing the *Allen* factors, we cannot say that Vargas was egregiously harmed.

Specifically, neither the State nor Vargas argued that Vargas was unaware that a peace officer was attempting to arrest or detain him. Instead, Vargas emphasized that he did not intentionally evade arrest. He argued that he avoided Trooper Helton because he felt he was being racially profiled, and because he was trying to avoid conflict. Additionally, when cross-examined by the State, Vargas admitted that he saw Trooper Helton behind him, that he saw the red and blue emergency lights on Trooper Helton's vehicle, and that he heard the audible siren from Trooper Helton's vehicle. Vargas also acknowledged that he was aware of other law-enforcement officers in front of his vehicle. It was these officers that deployed spikes in an effort to stop Vargas's vehicle. Further, during argument, the State offered no improper argument to the jury that they need not find beyond a reasonable doubt that Vargas knew a peace officer was attempting to arrest or detain him. And during his argument, defense counsel reiterated his contentions that Vargas did not intentionally evade. A review of the record reveals that the State's evidence and the entirety of Vargas's defensive theory did not place whether Vargas knew he was evading from a peace officer at issue. Accordingly, after reviewing the various *Allen* factors, we cannot conclude that Vargas was egregiously harmed by the

absence of a definition in the charge for the culpable mental state of "knowing." *See Allen*,

253 S.W.3d at 264; *Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*,

209 S.W.3d at 121. We therefore overrule Vargas's third and fourth issues.

## IV. CONCLUSION

Having overruled all of Vargas's issues on appeal, we affirm the judgment of the

trial court.


JOHN E. NEILL
Justice

Before Chief Justice Gray
  Justice Neill, and
  Justice Johnson
Affirmed
Opinion delivered and filed January 27, 2021
Do not publish
[CR25]

